Filed 8/12/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re S.H., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>S.P.,<br><br>　　　Defendant and Appellant. | A163623<br><br>(City and County of San Francisco Super. Ct. No. JD21-3137) |

　　　Appellant S.P. (Mother) appeals from a juvenile court dispositional order adjudging her young daughter, S.H., a dependent minor and placing her in out-of-home care with one of Mother's relatives.  Despite evidence that Mother and an alleged father claimed Native American ancestry solely to delay proceedings, she argues on appeal that respondent San Francisco Human Services Agency (Agency) failed to comply with provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq., ICWA) and current state law implementing ICWA.  The Agency concedes it erred by not interviewing additional family members about potential Native American ancestry.  We hold that when a social services agency accepts its obligation to satisfy its inquiry obligations under ICWA, a reversal of an early dependency order is not warranted simply because a parent has shown that these ongoing

1

obligations had not yet been satisfied as of the time the parent appealed. We therefore affirm the juvenile court's order.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

The infant minor came to the attention of the Agency in May 2021 when it received a report of general neglect. Mother was parenting with a man named Anthony H., who shares a last name with the minor. He missed a scheduled paternity test and, as of the time of the disposition hearing, there were no results indicating whether he was the biological father. He is not a party to this appeal, although he has a separate appeal from an order denying his request to be designated as a presumed father. (*In re S.H.* (A164981).) The parties agree that unless Anthony H. is so designated, any information he provided regarding possible Native American ancestry is not relevant in these proceedings. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 707–708 [ICWA does not apply to alleged fathers]; 25 U.S.C. § 1903(9) [definition of "parent" excludes an "unwed father where paternity has not been acknowledged or established"].)

Anthony H. was still part of these proceedings when, in May 2021, a social worker met with him and Mother and asked about possible Native American ancestry. They both reported that there was no known ancestry on either the maternal or paternal sides of the family. The Agency filed a dependency petition in June 2021. The Indian Child Inquiry Attachment (form ICWA-010(A)) attached to the petition states that a social worker had completed ICWA inquiry.

At a hearing in late June 2021, the juvenile court asked about Mother's and Anthony H.'s possible Indian ancestry. Mother's counsel reported no known heritage for Mother. Mother's counsel then discussed Mother's

2

support network, which included her mother, a grandmother, and an aunt. As for Anthony H., his counsel reported "possibl[e] . . . Cherokee" heritage on his mother's side of the family, with no further detail. Based on Anthony H.'s response, the court ordered the Agency to complete further inquiry (Welf. & Inst. Code, § 224.2, subd. (e)).[1]

In early July, a social worker received a voicemail from Anthony H., who apparently accidentally left his phone on after he completed his intended message. In the apparent unintended portion of the recording, he discussed with Mother a plan to claim that the minor had Indian ancestry to delay the Agency's removal of her from the home. Mother said that the minor did not have any Indian ancestry and that "she" (it is unclear whether this is a reference to Mother or the minor) was Japanese. Mother is elsewhere described in the record as African American. She likewise told a social worker that she identifies primarily as African-American but that she is bi-racial (of African-American and Chinese descent).

A social worker spoke with Mother in early August, and Mother stated she was not sure whether she had Native American ancestry. She had never met her father and was raised by her maternal relatives. Mother said she would have to call her maternal grandmother to ask for more information. ICWA inquiry was listed as "pending" when the disposition report was filed in August. Also in August, the maternal grandmother (Mother's mother) requested placement of the minor. There is no information in the record about whether the grandmother was asked about possible Native American ancestry.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

When a social worker spoke with the maternal great-grandmother in September, the worker asked about potential Native American ancestry. The great-grandmother reported that "she could not say for sure if her family lived on a reservation or has been registered with a tribe." She reported that *her* great-grandparents (the minor's great-great-great-great grandparents) "told her she has Blackfoot Cherokee," but she had no documentation regarding the possible affiliation. She also was not aware of her great-grandmother having lived on a reservation or receiving Native American services. The great-grandmother "as well as other [unspecified] maternal relatives" participated in at least one visit with the minor.

By the time an addendum report was filed in mid-September, neither Mother nor Anthony H. had completed the ICWA-020 form. Based on the foregoing information, the Agency recommended that the juvenile court find that there was "no reason to believe or reason to know" that the minor was an Indian child and that ICWA did not apply.

The minor was placed with a maternal relative, described in the record as either a maternal cousin or maternal great aunt. The record contains no information about whether the relative was asked about Native American ancestry.

At the beginning of the contested jurisdiction/disposition hearing held in late September 2021, the juvenile court addressed ICWA. After the deputy city attorney summarized the Agency's investigation, the juvenile court asked whether there was any reason to inquire with the Bureau of Indian Affairs. The deputy city attorney responded that further inquiry had yielded no specific information and that claims of Native American heritage appeared to have been made "because they [Mother and Anthony H.] thought they would have more services if the minor was [an Indian child]." The juvenile court

4

found that ICWA did not apply. The finding was without prejudice to conducting further research if Mother provided more specific information.

The juvenile court sustained allegations under section 300, subdivision (b) (failure to protect), that Mother had mental-health and substance-abuse issues that required treatment. The court adjudged the child a dependent minor and ordered out-of-home placement with her maternal relative.

When making its jurisdictional findings, the juvenile court stated, "I am troubled—I guess, it's just a side note—that the parents somehow wanted to claim Native American ancestry because somehow they [thought] they had a leg up by doing that. I don't know what they thought they would achieve by that."

## II.
### DISCUSSION

The only claim mother asserts on appeal is that the Agency conducted an inadequate investigation into the minor's possible Native American ancestry. She contends that the juvenile court thus erred in concluding that ICWA did not apply, and that this court should remand the matter so that the Agency can comply with its investigatory duties. The Agency concedes that it did not fulfill its duty of initial inquiry under ICWA because there were at least two maternal relatives it could have, but did not, question about possible Native American ancestry. (§ 224.2, subd. (b) [ICWA inquiry includes asking "extended family members" whether child is or may be an Indian child]; 25 U.S.C. § 1903(2) [extended family members include Indian child's grandparent and first or second cousin].) We accept the Agency's concession and conclude there is no need under the circumstances to disturb the juvenile court's order.

5

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287.) Those standards include notice to Indian tribes in state court proceedings to place a child in foster care or to terminate parental rights "where the court knows or has reason to know that an Indian child is involved" (25 U.S.C. § 1912(a); § 224.1, subd. (d)(1); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8); that is, "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord, § 224.1, subd. (a).) "Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*T.G.*, at p. 288.) "Oral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation is not accurate. Accordingly, just as proper notice to Indian tribes is central to effectuating ICWA's purpose, an adequate investigation of a family member's belief a child may have Indian ancestry is essential to ensuring a tribe entitled to ICWA notice will receive it." (*Id.* at p. 289.)

The Legislature enacted changes to the Welfare and Institutions Code, effective January 1, 2019, to conform its statutes to recent changes in federal ICWA regulations, which now require state courts to ask each participant in a child-custody proceeding whether the participant knows or has reason to

6

know if a child is an Indian child (25 C.F.R. § 23.107(a)).  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)  The ICWA investigatory process under state law is now expansive and potentially onerous.  The juvenile court and social services agency "have an affirmative *and continuing* duty to inquire whether" a minor in dependency proceedings "is or may be an Indian child." (§ 224.2, subd. (a), italics added; see also *In re Antonio R.* (2022) 76 Cal.App.5th 421, 430 [duty to develop information rests with court and social-services agency, not the parents or family members].)  "The duty to inquire begins with the initial contact." (§ 224.2, subd. (a).)  If a child is placed into temporary custody of the social services agency, the agency "has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b), italics added; Cal. Rules of Court, rule 5.481(a).[2])

Under this plain directive, the Agency did not satisfy its initial ICWA duty when it failed to ask Mother's mother and the maternal relative who has custody of the minor (either a cousin or aunt) about the family's possible Native American ancestry.  (*In re J.W.* (2022) 81 Cal.App.5th 384, 389 [error not to ask the mother's extended family members about their Indian ancestry despite having contact with a grandmother, uncle, and aunt].)  This is true notwithstanding the undisputed evidence that Mother and Anthony H. reported possible Native American ancestry in order to delay proceedings. (See *In re A.R.* (2022) 77 Cal.App.5th 197, 207 [although court conditionally reversed order terminating parental rights for ICWA inquiry compliance, it

---

[2] All further rule references are to the California Rules of Court.

noted that "[i]f Mother has brought this appeal for the purposes of achieving delay, . . . we condemn such tactics"].)

But we need not disturb the juvenile court's jurisdiction/disposition order just because the duty of initial ICWA inquiry has not yet been fully satisfied. Mother does not challenge the jurisdictional findings (i.e., that her daughter was a child described by section 300, subdivision (b)), or the dispositional finding (i.e., that there was clear and convincing evidence there would be a substantial danger to the minor were she not removed from parental custody). She contends, however, that because the juvenile court found without prejudice that ICWA did not apply, we must either "conditionally reverse" or "conditionally affirm" the juvenile court's order "and remand with instructions that the Agency comply with the investigatory duties set forth in the ICWA and California['s] parallel statute." We see no need for such a disposition.

Appellate courts generally review a juvenile court's ICWA findings for substantial evidence. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777, petn. rev. filed July 19, 2022, S275578.) In situations where ICWA inquiry error is uncontested, appellate review has often turned on whether the error was harmless; that is, "whether it [was] reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly." (*Ibid.*; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

We are aware there currently are at least five tests for assessing whether ICWA inquiry error is harmless. (See *In re Dezi C., supra,*

79 Cal.App.5th at pp. 774, 777–778[3] [summarizing three existing tests and introducing a fourth]; see also *In re Ezequiel S.* (July 29, 2022, B314432) ___ Cal.App.5th ___ [introducing a "hybrid substantial evidence/abuse of discretion standard"].) "[R]ecent appellate jurisprudence has adopted a continuum of tests for prejudice . . . ranging from a per se rule that any error is always prejudicial, to a test . . . finding no prejudice unless the appealing parent makes a proffer that interviewing extended family members would yield information about potential Indian ancestry." (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1011.) The range of approaches, along with the passionate dissents to some of those approaches, reflect the challenge in applying the clear legislative mandate to expand ICWA inquiry in situations where, like here, there is no serious reason to believe that further inquiry would reveal additional information that might ultimately lead to evidence that the minor is an Indian child. (Compare *In re T.G.*, *supra*, 58 Cal.App.5th at p. 295 ["the imposition of a duty to inquire that is significantly more expansive than the duty to provide ICWA notice is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers like Los Angeles, may well have lost the ability to convey accurate information regarding their tribal status"] with *In re A.C.*, *supra*, at p. 1019 (dis. opn. of Crandall, J.) ["As someone who handled a busy dependency calendar for the three and a half years immediately preceding this assignment, it is hard to understate the havoc, expense, and uncertainty caused by these conflicting mandates."].)

---

[3] The *Dezi C.* court held that an agency's failure to discharge its duty of initial inquiry is harmless unless the record, including any proffer on appeal, "contains information suggesting a reason to believe that the children at issue may be 'Indian child[ren],' in which case further inquiry may lead to a different ICWA finding." (*In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 774.)

Instead of focusing on whether the same ICWA finding would have been made absent error, we focus instead on whether the social service agency acknowledges error and we thus have reason to believe that its duty of inquiry will be satisfied. Where there is such an acknowledgement, we see no reason to set aside the jurisdiction/disposition order—even conditionally. Again, the duty to inquire is a *continuing* one. (§ 224.2, subd. (a); *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 6.) The Agency likewise has a duty "on an ongoing basis" to report "a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Rule 5.481(a)(5).) And the juvenile court, even after it concludes that ICWA does not apply, retains the power (and duty) to *reverse* that determination "if it subsequently receives information providing reason to believe that the child is an Indian child." (§ 224.2, subd. (i)(2); see also rule 5.482(c)(2).) The fact that the Agency here has acknowledged error indicates that it understands its duty to ask the maternal relatives about possible Native American ancestry. The Agency must satisfy this duty, if it has not done so already, and report its findings to the juvenile court. (E.g., *In re A.R.*, *supra*, 77 Cal.App.5th at p. 208 [if agency fulfilled duty after the mother belatedly raised the issue on appeal, any delay in remanding case should be brief because issue could be laid to rest before the appeal "was even fully briefed"].) And should the Agency learn additional information indicating a "reason to believe" the minor is an Indian child, thus triggering a duty of further inquiry, it must conduct additional interviews "as soon as practicable." (§ 224.2, subd. (e); see *In re T.G.*, *supra*, 58 Cal.App.5th at p. 292 [further inquiry required where the parent reported possible Cherokee

ancestry].)[4] Agency social workers clearly were aware of their inquiry duties, as they asked Mother and Anthony H. about possible Native American ancestry before the dependency petition was filed. The juvenile court is also clearly aware of this continuing duty, as it made its ICWA finding without prejudice and subject to Mother providing additional information. It would make little sense to reverse the jurisdiction/disposition order in order to direct the Agency and the juvenile court to do something they recognize they must do anyway.

We likewise see no need to "conditionally" affirm (or reverse) the juvenile court's order, since the order will not necessarily be reversed even if new information were to be discovered confirming the child's Indian heritage. True, if the Agency learns information that gives it "reason to know" that the minor is an Indian child, it will be required to provide notice to any relevant tribe or tribes pursuant to section 224.3. And the juvenile court will be required to treat the minor as an Indian child unless and until it determines

---

[4] Mother claims that the information already provided by her grandmother—that the grandmother's great-grandparents "told her she has Blackfoot Cherokee"—triggered a duty of further inquiry under section 224.2, subdivision (e). (E.g., *In re I.F.* (2022) 77 Cal.App.5th 152, 163 ["reason to believe" standard in § 224.2, subd. (e)(1), is "broadly construed"].) Even assuming, without deciding, that this is true, it appears Mother is claiming only that the Agency must interview the additional maternal family members that the Agency was required to interview under its initial duty of inquiry. Given the currently thin evidence of any tribal affiliation, coupled with the evidence that Mother claimed Indian ancestry as part of a plan to delay the proceedings, we reject any argument that further interviews or notice are currently necessary other than what the Agency already has acknowledged. (See *In re A.C.*, *supra*, 75 Cal.App.5th at p. 1022 (dis. opn. of Crandall, J.) ["in terms of fundamental fairness, it is untenable gamesmanship to allow a parent to stand idly by and then raise a 'winning' ICWA issue on appeal merely by pointing out the Department's error in not speaking with a single extended family member"].)

that ICWA does not apply. (§ 224.2, subd. (i)(1).) If the minor is an Indian child, the minor's tribe and Indian custodian will have the right to intervene at *any point* in the proceedings (§ 224.4), whether or not the juvenile court previously had assumed jurisdiction. And the tribe will have the power to petition the court to invalidate any action taken in the proceeding if the action violated ICWA. (§ 224, subd. (e); rule 5.487.) This includes the power to petition to set aside a final decree of adoption. (Rule 5.487(c).) Relevant tribes should, of course, be notified as soon as possible in any dependency proceeding, but their power to set aside previous actions does not hinge on whether the juvenile court previously assumed jurisdiction of a minor.

We agree with recent decisions concluding in similar circumstances that ICWA initial inquiry error occurred. But we do not agree that the proper disposition is to disturb, even conditionally, the jurisdiction/disposition order, since such a disposition may lead to unnecessary additional hearings, delay, and the micromanagement of further ICWA inquiry. In *In re A.C.*, *supra*, 75 Cal.App.5th 1009, for example, the juvenile court concluded that ICWA did not apply based solely on the parents' ICWA-020 forms stating they did not have Native American heritage. (*Id.* at p. 1014.) The court concluded that the social services agency failed to satisfy its initial inquiry duty because no ICWA inquiry was made of extended family members. (*Ibid.*) According to the court, the error was not harmless because "the record reveal[ed] readily obtainable information that was likely to bear meaningfully on whether [the minor] was an Indian child." (*Id.* at p. 1017.) The court affirmed the jurisdictional and dispositional orders regarding the minor, but remanded with instructions that the juvenile court order that within 30 days of the remittitur the social services agency report its investigation of the minor's potential Indian ancestry by interviewing

12

available extended family members. (*Id.* at p. 1018.) The 30-day period may have been unnecessary if the agency had conducted further inquiry while the appeal was pending and discovered nothing. Or it may have been too short if the agency was diligently trying, but was unable, to contact relatives or follow up on additional leads. (See *In re H.V.* (2022) 75 Cal.App.5th 433, 440–441 (dis. opn. of Baker, J.) [social-services agency "has no way to reliably know when to say when—i.e., to predict how many interviews of extended family members and others will be enough to satisfy a court that it has discharged its continuing duty to investigate whether a minor could be an Indian child"].) And even if the agency complied with the order within the 30-day period, it still had the continuing duty to inquire and follow up on any new leads. *In re Rylei S.* (2022) 81 Cal.App.5th 309, also "conditionally affirmed" a disposition order and remanded for "full compliance with the inquiry and notice provisions of ICWA." (*Id.* at pp. 326–327.) It is unclear how a "conditional" affirmance would affect the proceedings at this early stage, except possibly to require yet another hearing in the dependency proceedings that presumably already had additional review hearing scheduled.

A more difficult question would be presented were this an appeal from an order terminating parental rights. On the one hand, a hearing to consider the termination of parental rights is likely the last practical opportunity for any relevant Indian tribe to intervene in a proceeding. (E.g., Rule 5.482(a)(1) [no hearing to terminate parental rights until at least 10 days after notice to tribes where it is known or there is reason to know a child is an Indian child].) On the other hand, we share the concerns expressed in *In re Ezequiel G.*, *supra*, ___ Cal.App.5th ___ that returning a dependency case to the juvenile court with directions to conduct further ICWA inquiries *after*

13

parental rights have been terminated "[a]t best . . . significantly delay[s] entry of final judgments releasing children for adoption [and] at worst, . . . may result in potential adoptive parents deciding not to adopt." We also share the juvenile court's expressed concern in this case, that whatever stage in the proceedings, one wonders what Mother thought she might achieve by claiming Native American ancestry in order to get "a leg up by doing that."

Mother now complains that it is "nothing more than speculation and conjecture" to assume that interviewing additional maternal relatives would not lead to further information about possible Native ancestry. We observe, though, that Mother's trial counsel—who personally interacted with Mother and presumably had insight into the allegations that she and Anthony H. planned to fabricate Native ancestry—did not advocate further inquiry when ICWA was addressed at the jurisdiction/disposition hearing. Implementing the worthwhile goal of expanding ICWA inquiry to ensure every effort is made to retain tribal ties is only workable when, *in good faith*, "*all* participants—child protective agencies, the parents, all counsel, and the juvenile courts— . . . work together to determine whether children are Indian children." (*In re Ezequiel G.*, *supra*, ___ Cal.App.5th ___.) Such a requirement of good faith may be found in statutory notice provisions which provide that, "[w]ith respect to giving notice to Indian tribes, a party is subject to court sanctions if that person knowingly and willfully falsifies or conceals a material fact concerning whether the child is an Indian child, or counsels a party to do so." (§ 224.3, subd. (e).)

For now, we hold that disturbing an early order in a dependency proceeding is not required where, as here, the court, counsel, and the Agency are aware of incomplete ICWA inquiry. The Agency must comply with its broad duty to compete all appropriate inquiries and apprise the court, and

14

the court has a continuing duty to ensure that the Agency provides the missing information. So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both the Agency and the juvenile court have an adequate opportunity to fulfill those statutory duties. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 745 [harmless-error analysis generally entails "flexible, case-by-case approach"].)

## III.
### DISPOSITION

The juvenile court's order is affirmed.

_____

Humes, P.J.

WE CONCUR:


_____

Banke, J.


_____

Wiss, J. *


      *Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*In re S.H.*  A163623

16

Trial Court:

Superior Court of the City and County of San Francisco


Trial Judge:

Hon. Susan M. Breall


Counsel for Defendant and Appellant:

Elizabeth Klippi, under appointment by the Court of Appeal


Counsel for Plaintiff and Respondent:

David Chiu, City Attorney

Kimiko Burton, Lead Attorney

Elizabeth McDonald Muniz, Deputy City Attorney


*In re S.H.* A163623